opinion of the court

Per Curiam.

Final judgment entered April 19, 1982 is affirmed, with $25 costs; issuance of the warrant of eviction is, however, permanently stayed for reasons hereafter stated.
In this holdover proceeding landlord seeks to evict tenant from a rent-stabilized apartment. That apartment was originally occupied by the tenant, with her now former husband, in 1970, the latter vacating the premises in 1977. Tenant’s lease, which had been renewed several times, contains standard provisions limiting occupancy to “tenant and the tenant’s immediate family” and prohibiting subletting without landlord’s prior written consent.
*926 In May, 1981, tenant decided to live temporarily in the rural setting of New Paltz, New York. At that time tenant, without first seeking landlord’s approval, permitted her “best friend”, one Rebecca Hollen, to live in the apartment. Tenant visited the apartment occasionally during the remainder of 1981. From July, 1981 to December, 1981, Hollen paid the full amount of rent to tenant, who, in turn, made payments to the landlord.
On September 30, 1981 landlord served tenant with notice that she was violating “substantial obligations” of her tenancy, in that without the permission of the landlord tenant had “permitted persons other than the tenant or the tenant’s immediate family to use or occupy the premises and/or sublet or assigned [her] rights of occupancy to another or others.” Landlord demanded cure of the default by October 13,1981. It is conceded that the cure period was subsequently extended, the parties endeavoring to settle the dispute. When settlement negotiations stalled, tenant brought an action in the Supreme Court seeking a temporary injunction for the purpose of tolling the running of the time to cure the alleged violation (see First Nat. Stores v Yellowstone Shopping Center, 21 NY2d 630). After the denial of tenant’s Supreme Court application on November 13, 1981, from which no appeal was taken, landlord served a notice dated November 20,1981, purporting to terminate the tenancy as of November 28, 1981.
This holdover proceeding was commenced on December 3, 1981. After trial, the court below held that Ms. Hollen’s occupancy constituted a substantial breach of the lease, enforcement of which was not waived by landlord. Trial Term, finding that Ms. Hollen did not vacate the premises “until the end of the third week in December [1981]”, concluded that the tenant’s breach of the lease had not been timely or properly cured. The final judgment of possession was entered on April 19, 1982, issuance of the warrant stayed to July 31, 1982.
The unauthorized occupancy of Ms. Hollen constituted an illegal subletting. Tenant was required, under the express provisions of her lease, as well as under section 226-b of the Real Property Law, to provide landlord with advance written notice of her intent to sublet. Having *927 admittedly failed to give such notice, tenant substantially breached a material term of her lease and cannot now rely on section 226-b to justify the illegal transfer (Brefries East End v Platt, 112 Misc 2d 568; Claridge Gardens v Osorio, NYLJ, Dec. 23, 1981, p 7, col 1). Nor can it be said, on this record, that tenant’s breach — although admittedly cured before the trial herein — was timely cured. As properly recognized by the trial court, the objected-to subtenant did not by her own admission vacate the premises until, at the earliest, December 18,1981, or more than four weeks after the denial of tenant’s Yellowstone application and the running of the cure period. That Hollen may have taken preliminary measures to locate alternative living quarters, and was eventually successful in that endeavor, did not constitute satisfactory compliance with landlord’s demand to cure. The fact remains that the subtenant unjustifiably remained in occupancy long after the time permitted for remedy of the default.
Since tenant’s breach was substantial and was not timely cured, the final judgment entered in favor of petitioner should be upheld. However, issuance of the warrant should be permanently stayed in light of the recent passage of chapter 870 of the Laws of 1982. That enactment, effective July 29,1982, adds a new subdivision 4 to RPAPL 753, which reads: “In the event that [a holdover summary] proceeding is based upon a claim that the tenant or lessee has breached a provision of the lease, the court shall grant a ten day stay of issuance of the warrant, during which time the respondent may correct such breach,” Thus, before a warrant may now issue in holdover proceedings predicated upon a lease violation, a tenant must be afforded a 10-day grace period in which to remedy the lease violation.
Chapter 870 should be given retroactive application so as to govern the instant proceeding, in which tenant had cured her breach before entry of final judgment, even though that final judgment was rendered some three and one-half months prior to the effective date of the statute. By so construing chapter 870, we accomplish its manifest intent to avoid, whenever possible, unwarranted leasehold forfeitures. This construction is in accord with judicial *928 precedent affording retroactive effect to remedial housing legislation (see Whitmarsh v Farnell, 298 NY 336; Tegreh Realty Corp. v Joyce, 88 AD2d 820; Gordon & Gordon v Madavin, Ltd., 108 Misc 2d 349, affd 85 AD2d 937).
Hughes, P. J., Riccobono and Sullivan, JJ., concur.